By the Court,

Cowen, J.
The plea, notice of special matter, and exceptions at the trial, are all avowedly founded on the statute (2 R. S. 304, § 34, 2d ed.) which provides, that in an action against special bail, they [318] may plead “ that directions were given by the plaintiff or his attorney, to prevent the service of the said writs [of fi. fa. or ca. sa.] or either of them; or that any other fraudulent or collusive means were used to prevent such service; and if any such defence be established, it shall entitle the bail to a verdict.”
The notice sets up no fact beyond the plea. That does not aver that directions of any kind w;ere given to prevent the service of the ca. sa.; but only, that the sheriff was informed of what we must assume to have been true and honestly communicated, that the debtor was not and probably would not be in the county. The question then comes to this, and this only; is it essential that the means used should be fraudulent or collusive? Formerly, it was never considered the duty of the sheriff to make any search for the principal. The undertaking of the bail was to pay or surrender; they was bound to keep their eyes on the sheriff’s office, and if the ca. sa. was left there four days before the return day, it was enough (Hunt v. Coxe, 3 Burr. 1360). Of course, any directions given to the sheriff to prevent his serving the writ, would have been innocent. Then came the statute of 1813 (1 R. L. 324, § 6), enjoining the sheriff to attempt service, any direction which he might receive from the plaintiff or his attorney, to the contrary notwithstanding. This statute is contained substantially in the revision of 1830 (3 R. S. 304, § 33, 2d ed.) to which is added, that such directions to prevent shall constitute a good plea. That is the first clause of the statute iu question. It is the direction to prevent the service, and, as I understand it, such a direction as the sheriff would be bound to obey. The process is under the plaintiff’s control, he may desire a mere formal return for other purposes than to fix bail, and is entitled to demand it (see 4 Mass. R. 60, *181 63; 6 N. Hmp. R. 405). The old statute was therefore defective, in merely requiring the sheriff to search, for he could not know the purpose of the writ, except from the directions which he received. I think the first clause of the act must have intended to supply that defect; and that, alone, it would reach only binding directions. Without these, it being the duty of the sheriff to search, he would do so. It must be a direction, there- [319] fore, which would alter his duty; if not, the omission would be his, and not the plaintiff’s, and could work no prejudice to the latter (7 Wendell, 252, 3). If the directions were such as to prevent the service, then, whether fraudulent or not, it would certainly, under our system of charging bail, be right to say the writ never was intended for that purpose. It was for some other; and whether fraudulent or not, in respect to the bail, they should in reason be protected. But it was also foreseen, that the same result might follow from the indirect conduct of the plaintiff or his attorney. Though maintaining silence, or expressing the intent to charge bail, such information might be given to the officer as to leave the general duty of search upon the sheriff, but yet mislead, and in consequence prevent his searching with effect. Hence, the statute went farther, and provided against any fraudulent or collusive means to prevent the service.
I do not see any room for doubt, that the last clause of the statute was intended to cover all preventive means short of a controlling direction. Any other means must, therefore, by the express words of the statute, be fraudulent or collusive, and should have been thus characterized in the plea or notice. That, is not done here, either directly or argumentatively. The sheriff was informed of the simple truth, that Hotchkiss was not and probably would not be in Monroe county; propably what the sheriff would have learned at once on inquiry els where; and thus, by the same truth, have been brought into the same state of forgetfulness and inadvertence. It might as well have been imputed that the attorneys informed him of a party of his friends, or invited him abroad on a journey of pleasure, thus diverting his attention. The information was probably intended to save the sheriff a useless inquiry, perhaps at some expense, in a distant neighborhood; for the man, it seems, lived in Connecticut.
I have said that the notice does not go beyond the plea; of course, the evidence was property rejected at the trial. It is thought by the counsel for the plaintiffs in error, that under the liberal construction due to a notice of special matter, the evidence was receivable, though it might be [320] defective when standing in a more nice frame of a plea. But a notice must contain every essential fact in some form; a general form will do; indeed an intimation sufficient to put the party on inquiry, will do in some cases (Chamberlin v. Gorham, 20 Johns. R, 746, 749); though the general rule, undoubtedly, is, that the notice should contain all the facts necessary to sustain a plea against a general demurrer, or, at least, a motion for judgment, non obstante veredicto. There is nothing to take this case out of that rule. Neither falsehood, fraud, nor collusion are mentioned in the plea or notice The offer at the trial, wras also precisely commensurate with the notice. The counsel contended that fraud was not material; but if the court should differ from him, there would then be a question for the jury, whether the acts of the attorneys were fraudulent. Surely, the court below were right in rejecting evidence of a fact which the defendants would neither suggest in their plea, nor notice, nor offer on the trial.
The judgment must be affirmed.